**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-02106-KLM

**LAKE PARK CONDOMINIUM ASSOCIATION, INC.**, a Colorado non-profit corporation,

Plaintiff,

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CERTIFICATE NO. LHPQ-70980-70 and CERTIFICATE NO. LSP1000270,**

Defendants.

---

**RESPONSE TO DEFENDANT LSP1000270'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff, Lake Park Condominium Association, Inc. ("Lake Park"), by and through its attorneys, Furtado Law PC, hereby submits its response to Defendant LSP1000270's Motion for Partial Summary Judgment as follows:

## I. INTRODUCTION

Defendant LSP's Motion mirrors Defendant LHPQ's Motion for Summary Judgment on Plaintiff's claim for a violation of the Colorado Consumer Protection Act ("CCPA"). Defendant LSP also incorrectly asserts that Plaintiff filed a separate cause of action for violation of Colorado's Unfair Claims and Deceptive Practices Act. Defendant LSP's motion is premature as discovery has just begun and Plaintiff needs additional time to discover Defendant LSP's and CJW and Associates' claims guidelines and procedures as well as other relevant information showing that Defendant LSP and CJW

and Associates have failed to adopt reasonable standards for adjusting claims among other violations of the UCDPA. In further support, Plaintiff states as follows:

## II. RESPONSE TO DEFENDANT LSP'S STATEMENT OF UNDISPUTED MATERIAL FACTS.

1. Plaintiff admits Defendant LSP's undisputed facts no. 1-11.

2. Plaintiff denies Defendant LSP's undisputed fact No. 12 as an opinion statement and as an incomplete statement of Plaintiff's argument in its response to Defendant LHPQ's Motion for Summary Judgment. A violation of the Unfair Claims and Deceptive Practices Act is a basis for a Colorado Consumer Protection Act claim under Colorado law. Dkt. No. 28, at * 10-11.

## III. PLAINTIFF'S ADDITIONAL UNDISPUTED MATERIAL FACTS.

1. Plaintiff reported the May 8, 2017 loss on May 9, 2017. **Exhibit 1.**
2. On May 10, 2017, Defendant hired CJW and Associates as its third-party administrator on the claim. **Exhibit 2.**
3. The same day, CJW and Associates hired Vericlaim, Inc. as its independent adjuster on the claim. **Exhibit 3.**
4. The assignment paperwork given to Vericlaim, Inc. details some of CJW and Associates' guidelines for adjusting standards that Vericlaim, Inc. must follow including:
    a. An adjuster must complete an inspection of the property within 48 hours of the assignment. **Exhibit 3**, at * 2.
    b. Reports of inspections of due to CJW and Associates within 72 hours of an inspection. **Exhibit 3**, at * 2.
    c. An initial report is due to CJW and Associates within 10 days of the assignment. **Exhibit 3,** at * 2.

5. CJW and Associates included in this attachment its "Treating Customers Fairly Policy" that states CJW will "Make a fair and equitable offer of settlement or denial of a claim only after a complete and proper investigation of the claim based upon all information available." No timeframe is given for this policy. **Exhibit 3**, at * 3, ¶ 6.
6. Defendant LSP's first estimate is dated August 7, 2018 with a replacement cost value of $279,363.81 (actual cash value $220,092.73). **Exhibit 4,** at * 8.
7. On August 22, 2018, three months after the reported loss, Byron Gilchrest with Vericlaim, Inc. sent his fifth report to CJW & Associates, outlining that the claim had the following steps yet to be completed:
    a. Waiting on a signed PA contract with Scott Benglen for the date of loss.
    b. Work with Verizon to resolve liability and possible reimbursement issues for additional cost and expense issues.
    c. Waiting to resolve overlap issues from prior claim on interior damages.
    d. Requested asbestos testing result.
    e. Work to obtain agreed price with insured and PA. **Exhibit 5,** at * 3-4.
8. Mr. Gilchrest's' primary basis for waiting to make a claims decision was that he wanted to reduce Defendant LSP's liability by coordinating with the cell carriers to pay for moving cell towers on the roof. **Exhibit 5**, at * 2, Verizon subsection, ¶ 2.
9. Mr. Gilchrest also asked permission to disclose the above estimate to Plaintiff's public adjuster Scott Benglen. **Exhibit 5**, at * 1, payment requested subsection.

10. On December 5, 2017, Defendant LSP disclosed to Plaintiff's public adjuster its estimate for repairs that Defendant LSP agreed to pay on. **Exhibit 6**.

## IV. LEGAL STANDARD

A motion for summary judgment should be granted only when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has determined this rule **only applies after there has been adequate time for discovery.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986) (emphasis added).

## V. ARGUMENT

### *A. Lake Park Has Not Asserted a Claim Based Solely on The Unfair Claims – Deceptive Practices Act ("UCDPA").*

Defendant is correct that the UCDPA does not provide a private right of action, and Lake Park does not intend to suggest otherwise. Rather, Lake Park asserts violations of the UCDPA as the basis for relief under the CCPA. As the Supreme Court of Colorado held, the "CCPA is meant to work in tandem with other regulatory provisions in the Colorado statutes, and as such, works in conjunction with, not to the exclusion of, the UCDPA." *Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 49 (Colo. 2001); *see also Barry v. Bally Gaming, Inc.*, 320 P.3d 387, 392 (Colo. App. 2013). Thus, "the CCPA applies to an insurer's post-sale or bad faith conduct and unfair claims handling practices" such that "an insured, like any consumer, may seek

compensation for damages as a result of post-sale deceptive practices by an insurance company under the provisions of the CCPA." *Showpiece*, 38 P.3d at 59. To make clear any confusion, Lake Park is asserting a CCPA claim, with violations of the UCDPA as the underlying unfair and deceptive conduct.

***B. Defendant LSP's Motion is Premature as Discovery Has Just Begun in this Case.***

Defendant LSP seeks dismissal of Lake Park's CCPA claim because of the impossibility that Defendant LSP's actions in this claim significantly impacts the public as a matter of law. Defendant LSP also attacked Plaintiff's claim stating there can be no public impact for an insurer's failure to act reasonably on a single claim. However, under F.R.C.P. 56(d) relief, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: … (3) issue any appropriate order." FRCP 56(d)(3). That declaration must specify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Birch v. Polaris Indus., Inc*., 812 F.3d 1238, 1249 (10th Cir. 2015); *See also Celotex*, 477 U.S. at 322–23, (1986) (summary judgment is premature if there has not been "adequate time for discovery"). This Court should not dismiss this claim at the outset of discovery because Plaintiff has met the requirements for relief under F.R.C.P. 56(d) as follows:

**i. <u>There are probable facts not available that could be obtained through written discovery showing that Defendant LSP and CJW and Associates violated the Colorado Consumer Protection Act.</u>**

The elements of a valid Colorado Consumer Protection Act violation that are met in this case are: (1) the Defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of Defendant's business; (3) it significantly impacts the public; (4) the Plaintiff suffered injury to a legally protected interest and (5)the challenged practice caused actual injury to Plaintiff. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). In the insurer context, it is an unfair and deceptive trade practices to: (1) fail to act reasonably promptly upon communication with respect to claims arising under insurance policies; (2) fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (3) to not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability is reasonably clear. C.R.S. § 10-3-1104 (1)(h).

Regarding what actions constitute a significant public impact, the Court must consider: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice and (3) evidence that the challenged practice has previously impacted other consumers or has a significant potential to do so in the future. *Rhino*, 62 P.3d 142, at 148. However, this list is not exhaustive. *One Creative Place, LLC v. Jet Center Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App 2011); *see also* CJI-Civ. 4th 29:4 (2017) ("… 6. Include any other factors the court has determined are relevant in determining significant public impact."). For example, "the public nature of the business

may be a factor to consider when determining if the challenged practice affects the public." *Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 156 (Colo. 2007). Additionally, not any one factors is determinative of a public impact. *One Creative*, 259 P.3d at 1290. Instead, the factors "describe an analysis more akin to a balancing test than a checklist." *Id.*

Perhaps most important, the issue of a significant public impact is not necessarily one that may be determined as a matter of law. *Id.* at 1289. Rather, this issue is properly within the purview of the jury when material facts are in dispute. *Id.*; *see also* CJI-Civ. 4th 29:4 (2017). As discussed below, summary judgment on the issue of public impact is premature at this point.

**1. Factor 1: The number of consumers directly affected by the challenged practice**

Here, some evidence has already been disclosed that CJW and Associates may have improper procedures in place to promptly resolve claims in violation of C.R.S. § 10-3-1104. As discussed below in Factor 3, CJW and Associates is the subject third-party administrator in other lawsuits involving Lloyd's syndicates for bad faith insurance adjustments. Also, even though Plaintiff filed its claim within a day of the date of loss of June 4, 2015, Defendant LSP via its adjusters CJW and Associates and Vericlaim, Inc. were still deciding coverage in August 2017. *See* Plaintiff's Additional Undisputed Facts No. 1-8. The guidelines provided by CJW and Associates do not address coverage decision timeliness. Defendant LSP's known reason for the delay is that Defendant LSP wanted to reduce its liability on the cell tower detach and reset. Plaintiff's Statement of Additional Undisputed Facts No. 8.

Plaintiff seeks F.R.C.P. 56(d) relief to conduct discovery regarding the timing of coverage decisions from CJW to determine if Defendant LSP via its agents has reasonable adjusting standards to promptly resolve claims as no claims decision was made until December 5, 2017. Plaintiff's Statement of Additional Undisputed Facts No. 10. Additionally, as provided above in Plaintiff's response to Defendant LHPQ's Motion for Summary Judgment, if CJW or its agents does not in other cases attempt in good faith to settle claims fairly at the time liability is reasonably clear, Plaintiff's CCPA claim has merit. Additional discovery is needed to determine the extent of the public impact of CJW and Associates' adjusting practices in the insurance industry.

**2. Factor 2: The relative sophistication and bargaining power of the consumers affected by the challenged practice.**

This factor heavily weighs in Lake Park's favor. Colorado courts have consistently held there is inherently a disparity in the sophistication and the bargaining power between an insurance carrier and an insured. "Because of the unequal bargaining power between insurers and insureds, and because insureds are generally not highly sophisticated in the art of reading insurance policies, an increased risk exists that an insurer may intentionally, or inadvertently, exploit insureds." *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1049 (Colo. 2011). "[A]lthough they may not technically qualify as contracts of adhesion, [insurance contracts] are not ordinary, bilateral contracts either; they are not the result of bargaining power and are often imposed on a take-it-or-leave-it basis." Id; see also *Goodson v. American Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) ("… there is a disparity in bargaining power between the insurer and the insured; because the insured cannot obtain materially

different coverage elsewhere, insurance policies are generally not the result of bargaining."). This is so because:

> [M]otivation for the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to seek commercial advantage.

*Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1353 (Colo. 1993).

The dynamic between Lake Park and Defendant does not differ from that described in the cases above. At the very least it is an issue of fact whether Lake Park is sophisticated enough in the art of reading insurance policies or attuned to the intricacies of evaluating property damage for coverage under such policies.

**3. Factor 3: Evidence that the challenged practice previously has impacted other consumers or has a potential to do so in the future.**

There is a genuine issue of fact that Defendant's third-party administrator CJW and Associates has previously engaged in similar unfair claim practices and that this continued practice impacts other consumers and has the potential to do so in the future. First, Plaintiff contends that Defendant LSP has (1) failed to act reasonably promptly upon communication with respect to claims arising under insurance policies; (2) failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; and (3) has not attempted in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability is reasonably clear. C.R.S. § 10-3-1104 (1)(h).

Similarly, Plaintiff's counsel has personally sued other Lloyd's syndicates working with CJW and Associates in the following cases:

- Certain Underwriters at Lloyd's London, Subscribing to Certificate No. LHPQ-71423-70 v. Southwind and Eastpoint Homeowners Association, Inc., 16-CV-1268.

- The Eastwood Townhomes Association, Inc. v. Certain Underwriters at Lloyd's London, Subscribing to Certificate No. LHPQ-71286-70, 16-CV-02686-PAM-KMT.

In both cases, Plaintiff's counsel represented the insured against a Lloyd's syndicate utilizing the services of CJW and Associates to adjust the claim. In both cases, the insured made claims that the Defendant insurer utilizing CJW failed to properly investigate the claim. *See* complaints, attached as **Exhibit 8-9**. To the extent that CJW and Associates continues to improperly adjust claims or claims are made against insurers utilizing CJW, there is a genuine dispute of fact whether CJW' conduct in this case impacts the public. Additional discovery is needed to determine how CJW's adjusting practices impacts the public-at-large. *See* **Exhibit 7**.

**ii. <u>The probable facts needed to rebut Defendant LSP's Motion for Partial Summary Judgment are not available because discovery has just begun and Defendant LSP's motion is premature on the topic.</u>**

Plaintiff seeks F.R.C.P. 56(d) relief from Defendant LSP's Motion for Partial Summary Judgment because Defendant LSP's motion is premature at this stage of the proceeding. Pursuant to the scheduling order, (Dkt. No. 19), (1) the discovery cut-off in this matter is September 30, 2018, (2) expert disclosures are due August 1, 2018, (3) and the written discovery serve by date is August 15, 2018. Put simply, as soon as practicable after Plaintiff is finished responding to this Motion, Plaintiff will conduct discovery to determine how extensively CJW's adjusting standards impact the public.

**iii. <u>Plaintiff Plans on Taking Discovery into its CCPA Claim as Soon It Responds to All the Motions Filed by Defendants So Early in this Action and Additional Time as Provided the Scheduling Will Allow for Plaintiff to Defendant Its CCPA Claim.</u>**

If the Court is to consider what steps Plaintiff has taken to obtain necessary discovery in this matter to defend its CCPA claim against Defendant LSP, Plaintiff requests this court consider its scheduling order deadlines and that Plaintiff has been busy responding to Defendants recent spat of motions so early the case. Plaintiff understands and agrees to abide the discovery deadlines in the Court's scheduling order and there is no bad faith on Plaintiff's part in delaying discovery on Plaintiff's CCPA claim. *See* **Exhibit 7**.

## VI. CONCLUSION

In conclusion, Defendant LSP's Motion really a motion is premature as discovery has just begun. Plaintiff agrees that the Court must determine as a matter of law that a CCPA claim is a meritorious legal claim, but Defendant LSP's Motion is improperly framed at this stage of discovery. As such, this Court should deny Defendant's Motion as premature, and grant Plaintiff relief under F.R.C.P. 56(d) so that Plaintiff can conduct necessary discovery into the public impact of CJW and Associates' adjusting procedures and whether they significantly impact the public.

WHEREFORE, Lake Park Condominium Association, Inc., by and through its counsel Furtado Law PC, and respectfully requests the Court DENY Defendant LSP's Motion for Partial Summary Judgment and for such other relief as the Court deems just.

Respectfully submitted this 30th day of March 2018,

Furtado Law PC

*s/ Nathanael Archuleta*

Nathanael Archuleta
3773 Cherry Creek N. Drive, Ste. 575
Denver, Colorado 80209
Tel: (303) 755-2929
nathanael@furtadolaw.com
*Attorney for Plaintiff Lake Park Condominium Association, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of March 2018, a true and correct copy of the foregoing was filed with the Court via the CM/ECF filing system, which will send notification of the same to the following:

Patrick Q. Hustead
Connor L. Cantrell
Ryan M. Hicks
The Hustead Law Firm
4643 S. Ulster Street, Ste. 1250
Denver, Colorado 80237
Tel: (303) 721-5000
pqh@thlf.com
clc@thlf.com
rmh@thlf.com
*Attorneys for Defendants*

*s/ Nathanael Archuleta*
Nathanael Archuleta, Esq.