vericlaim
a sedgwick company
Byron Gilchrest
bgilchrest@vericlaiminc.com
Office: (254) 773-9918

8/22/2017

CJW & Associates, Inc
1420 Edgewater Drive, Ste. 200
Orlando, FL, 32804

Attn.: Richard Walsh

| | | | |
|---|---|---|---|
| **RE:** | **REPORT NUMBER** | : | **Fifth** |
| | Insured | : | Lake Park Condominium Association, Inc. |
| | Policy Number | : | LSP1000270 |
| | Policy Term | : | 9/24/2016 to 9/24/2017 |
| | Date of Loss | : | 5/8/2017 |
| | Location of Loss | : | 3047 W. 47th Avenue Denver, CO 80211 |
| | Type of Loss | : | Hail |
| | Broker | : | Assured Partners of Colorado LLC |
| | Co. Claim Number | : | 4138902 |
| | VeriClaim File Number | : | QCC17751340 |

We submit herewith our Fifth Report concerning the above captioned.

**PAYMENTS REQUESTED/QUESTIONS SUBMITTED**

Attached is John Critch's revised estimate, from JS|Held, roof report and estimate with regard to the loss. After your review, please advise if it is acceptable to forward to the Public Adjuster, Scott Benglan. This will need to be with the understanding that it is subject to the policy contract, policy deductible, and adjustments for prior damages.

Forwarding the estimate to Scott Benglan would be subject to receiving a signed copy of his PA contract regarding this date of loss.

**ESTIMATE OF LOSS/ LOSS ADJUSTMENT**

| **Property Damage** | **Original** |
|---|---|
| Building | $279,363.81 |
| **Property Damage Subtotal** | **$279,363.81** |
| **Less Depreciation** | $59,271.08 |
| **Less Deductible(s)** | $81,532.36 |
| **Net Estimate** | $138,560.37 |

Exhibit 5

Estimate is based on John Critch's, of JS|Held, scope completed with the insured and/or their representative. **The amount above is based solely on the damage involved with no regard to possible contribution, or coverage verification. The dollar amount stated is not intended to establish settlement value but is intended to reflect the severity of the damage only.**

**ISSUES INVOLVED**

Attached is the revised estimate from John Critch, with JS|Held. Below is an outline regarding issues that we had requested he address.

Asbestos

Based on the age of the building we do anticipate asbestos issues. It appears there is an Ordinance or Law Coverage; limit is $250,000.00 under endorsement, CP-0405. However, the Asbestos Endorsement LMA-5019 does list wind and hail as a covered cause of loss that would give rise to asbestos coverage for only the area which has been physically damaged.

Prior Claim

If we are close in negotiating the loss, we need to discuss if prior damages in the interior units would be considered in the current loss. It is my understanding that the Insured has not indicated that they wish to take the prior claim off of the table. I think it would be a good idea to force this issue with the Insured and Public Adjuster.

Possible Coverage Issues

There was a question to see if temporary repairs (silicone coating) to the roof would be considered pre-existing damage, under the Existing Damage Exclusion Endorsement. There was also a question if there was a limit on the first loss amount, or aggregate limit for the first loss.

Verizon

We had asked John Critch to explanation explain his thoughts regarding Verizon's possible contribution with regard to supplying Stanchions, roofing supports and bar rigging on the crane for Verizon. Below we have paraphrased his thoughts and approach to working with Verizon to reimburse or contribute for additional expense. John Critch's explanation regarding his take on the Verizon issue is below:

John felt it was a much quicker solution to coordinate and then wait on Verizon to respond, mobilize. He indicated Verizon wasn't likely willing move their equipment to a temporary system, remove the existing gear, allow roofers to install a new roof, and then reinstall their gear. He felt that a skilled team could use a spreader bar configuration, temporarily move a section at a time, allow the roofers to do their part, and reset the bracketry. He strongly suggested we get Verizon's buy-in before anything happens due to liability issues. The roofer would need to work with Verizon to create a schedule and activities sheet that shows proper techniques. Or with any luck Verizon would do the majority of it and we'd avoid the liability all together. This was apparently a brainstorm idea they came up with to expedite the replacement of the roofs. Obviously, not anything is set in stone at this time. John Critch and I have also approached Scott Benglen (the PA) to find out who we can talk to at Verizon. Scott indicated he

will research this information and get back to us on this. Once we hear back from Scott, John can engage the experts and get more information regarding their plan of repair. John's theory is that the manufacturer is not going to be fond of a bunch of workers up walking around a brand new roof making all kinds of penetrations in the new membrane roof to install a series of receivers/transmitters. He felt that the whole replacement has bad idea written all over it. However, because the HOA receives $5,000.00 a month from Verizon for the use of their roof, I doubt they want to chance losing the contract to anyone else. John indicated we will need to do additional work to negotiate something more concrete with Verizon, and I concur.

Below is John Critch Repair Invoice Review:

A. RS Means lists 0757133100700 Spray-on Silicone Coating @ $1.91/sf of roofing coverage, if we do the math that means the roof coating should have been $16,850 for both flat roofs. No they did not spray the mansard walls on the inside and unless they coated the roof twice which seems a bit unlikely they were over double what the listed costs show.

B. In all my estimates and reports I NEVER am allowed to give O&P as well as Project Supervision. It's ALWAYS been an either or in Dallas and most areas in TX. Unless the Adjuster / Examiner just flat out refuses either of them. That happens occasionally.

C. If you can get them to send a daily breakdown so I can audit them properly then I am all about helping the cause. But I have to tell you this invoice is all over the place.

**REMARK**

The blanket limit of insurance is $8,153,226.00 with an effective date of 9/24/16. There is a one percent deductible that would apply. This would bring the deductible to $81,532.26. We have requested, but not received the Public Adjuster's contract agreement with the insured with regard to this date of loss. I have sent several emails requesting said document.

You were also checking into determine if the temporary repairs with silicone roof coating, on the prior claim, would be considered replacement under the Existing Damage Exclusion Endorsement. You were also checking to determine if there was a limit on the first loss amount, or an aggregate limit for the first loss.

**REMAINING ITEMS**

We are still waiting on a signed copy of the Scott Benglen, PA contract for this specific date of loss.

We have requested Verizon contact person information regarding this loss.

Resolve overlap issues from the prior claim, on interior damages.

We have requested a daily breakdown and itemization on the emergency repair invoice.

We have also requested a copy of the asbestos test, if completed.

Work with Verizon to resolve liability and possible reimbursement issues for additional cost and expense issues.

Resolve emergency repair invoice issues with PA.

Work to obtain an agreed price with insured and PA.

**DIARY**

Upon receipt and review, please feel free to contact me at (254) 760-5411. I trust your office will be in contact to discuss the loss further. Please diary your file for my next report to follow in 30 days.

Very truly yours,

Byron Gilchrest

VeriClaim, Inc.
Email Address: bgilchrest@vericlaiminc.com

**ENCLOSURES:**

1. John Critch, JS|Held- Estimate Revised