| | |
|---|---|
| **DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO.**<br>**7325 South Potomac St., Centennial, Colorado 80112**<br>**Telephone: (303) 649-6355** | DATE FILED: September 29, 2016 10:30 AM<br>FILING ID: BFF4F931715C3<br>CASE NUMBER: 2016CV32366 |
| **THE EASTWOOD TOWNHOMES ASSOCIATION, INC. a Colorado Non-Profit Corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO CERTIFICATE NO. LHPQ-71286-70**<br><br>Defendant. | ^COURT USE ONLY^ |
| ***Attorney for Plaintiff***<br>David J. Furtado, No. 28002<br>Furtado Law PC<br>3773 Cherry Creek North Drive, Ste. 575<br>Denver, CO 80209<br>Telephone: (303) 755-2929<br>Facsimile: (303) 309-6463<br>E-Mail: dfurtado@furtadolaw.com | Case No.:<br><br>Division: |
| **PLAINTIFF'S COMPLAINT** | |

COME NOW The Eastwood Townhomes Association, Inc. (hereinafter "Plaintiff") and for its Complaint against Defendant Certain Underwriters at Lloyd's London (hereinafter "Defendant") alleges and avers as follows:

## I. NATURE OF CLAIMS

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of contract, statutory claims pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of a timely and proper claim for covered benefits, and damages for Defendant's bad faith breach of insurance contract and breach of the covenant of good faith and fair dealing.



Exhibit A

Exhibit 9

## II. FACTUAL ALLEGATIONS

2. Plaintiff is a non-profit corporation duly organized under the laws of Colorado located at 15321 through 15465 East Louisiana Avenue, Aurora, Colorado 80017.

3. Defendant is a foreign corporation with a principal place of business being Gallery 5, One Lime Street, London EC3M 7HA.

4. Pursuant to C.R.C.P. 98(a) venue is proper as Plaintiff's property is in Arapahoe County, Colorado.

5. This is an insurance case arising from Defendant's refusal to provide covered benefits to the insured Plaintiff based on the insurers' interpretation of their contract and incomplete, cursory, and wrongful investigation of Plaintiff's legitimate insurance claim.

6. Plaintiff sought and obtained Condominium Association Coverage, Certificate No. LHPQ-71286-70 (hereafter "Policy") for its townhomes. The Policy period included the date of loss of on or about September 29, 2014 as the policy period was July 23, 2013 through July 23, 2015. Plaintiff invested in this insurance product and service from Defendant for coverage intended to protect the insured property from certain property and casualty perils.

7. On September 29, 2014, Plaintiff's property was damaged by a hailstorm.

8. Defendant hired Jeff Higgins at Vericlaim and Ralph Peck at Halliwell to handle Plaintiff;s property claim.

9. On approximately October 10, 2014, Mr. Higgins and Mr. Peck inspected the property.

10. On December 21, 2014 Mr. Peck authored a report noting limited damages to Plaintiff's roofing and some paint damage.

11. On January 29, 2015, Eastwood engaged Claim Solutions, LLC as its Public Adjuster.

12. On March 11, 2015, Claim Solutions, LLC wrote an estimate for Plaintiff's damages, which noted severely damaged eight inch lap siding for and sent the estimate to Jeff Higgins. The estimate was in the amount of $1,490,604.10

13. On March 17, 2015 Mr. Higgins requested all available documents from a hailstorm that hit Eastwood in 2009-2010 and was covered by The Travelers Insurance Company of America at the time of the loss.

14. On March 16, 2015 Mr. Higgins requested receipts and all documentation, invoices, etc. for the previous hail claim that was adjusted by Travelers.

15. On April 2, 2015 Claim Solutions, LLC requested Defendant's entire file including the underwriting file for this property.

16. Claim Solutions, LLC sent the Stormguard roofing invoice to Mr. Higgins on April 9, 2015 as well as the Travelers claim estimate and loss run for the period requested for the 2009-2010 hailstorm.

17. On May 7, 2015 Claim Solutions, LLC sent a letter to Vericlaim and Mr. Higgins stating that he sent them all the documentation regarding Plaintiff's previous claim for the hailstorm of 2009-2010. The letter also advised Mr. Higgins that Claim Solutions, LLC was not authorized to communicate with Travelers and that Mr. Higgins would have to speak with them. Claim Solutions, LLC also requested Defendant's underwriting file.

18. On June 3, 2015 Claim Solutions, LLC sent Mr. Higgins and Vericlaim the payments that Travelers issued for the 2009-2010 claim. The checks totaled $237,231.90.

19. On June 4, 2015 Mr. Higgins requested verification that the roofing and claim work was performed from the previous claim. Claim Solutions, LLC again sent the Stormguard contract.

20. On June 4, 2015 Mr. Higgins requested copies of payments to the roofing contractor for the prior claim. Claim Solutions, LLC forwarded the Travelers check that was endorsed over to Stormguard roofing.

21. On June 11, 2015 Claim Solutions, LLC forwarded two additional checks that were written from Eastwood Townhomes to Storm Guard Roofing, one check for $50,000 and a second for $40,000. These were in addition to the Travelers check for $146,380.00 that was endorsed over to Stormguard.

22. On June 16, 2015 Mr. Higgins wrote and demanded an itemized invoice from Stormguard stating that Plaintiff would not have paid the contractor $90,000.00 without it. Claim Solutions, LLC responded that Plaintiff actually paid Stormguard $236,380.00 and that Plaintiff had attached all the checks and the signed contract with Stormguard. Claim Solutions, LLC reiterated that all of the information was sent Mr. Higgins and Vericlaim that we have on the prior storm and claim.

23. On June 25, 2015 Claim Solutions, LLC asked Mr. Higgins about the timeframe for the moving forward of the claim process.

24. On July 10, 2015 Claim Solutions, LLC wrote to Mr. Higgins reiterating all the documentation regarding the Travelers claim had been forwarded to Mr. Higgins and that the current claim needs resolution.

25. On July 14, 2015 Plaintiff received a representation letter from CJW Associates, indicating that CJW is now representing Defendant. CJW also sent a reservation of rights letter to Plaintiff.

26. On August 11, 2015 Claim Solutions, LLC forwarded to CJW and Mr. Higgins the Plaintiff Board of Directors meeting minutes requested by CJW.

27. On August 25, 2015 Claim Solutions, LLC wrote CJW and Mr. Higgins hoping to clarify the outstanding issues and to verify the documentation that was sent to Mr. Higgins and CJW.

28. On September 1, 2015 Claim Solutions, LLC forwarded a reserve study for Plaintiff that was requested by CJW.

29. On September 3, 2015 Claim Solutions, LLC wrote to CJW and Mr. Higgins stating that it believed all the information requested had been sent to CJW and Mr. Higgins.

30. October 14, 2015 Suzanne Meintzer sent a letter explaining Defendant's position. Ms. Meitzer also agrees to have Mr. Higgins and Mr. Peck to re-inspect the property.

31. November 10, 2015 Claim Solutions, LLC Mr. Higgins and Mr. Peck re-inspected Plaintiff's property.

32. One January 14, 2016 Ms. Meintzer wrote to Claim Solutions, LLC with a revised estimate from Mr. Higgins and a letter from Halliwell. Defendant revised its estimate to Replacement Cost Value of $273,815.40.

33. On March 10, 2016 Claim Solutions, LLC wrote to Ms. Meintzer stating that it did not agree with the calculated loss amount and that if they wanted a signed Proof of Loss to provide one for undisputed Actual Cash Value amount.

34. On March 28, 2016, Claim Solutions, LLC sends a notarized Proof of Loss to Ms. Meintzer for the amount of loss calculated to be $1,490,604.10.

35. On April 8, 2016 Claim Solutions, LLC received a letter from Ms. Meintzer disputing items in our estimate and requesting clarification.

36. On June 16, 2016 Claim Solutions, LLC replied to Ms. Meintzer with a line itemization of the differences between the Claims Solutions, LLC and Defendant's estimates and provided clarification.

37. Defendant owed Plaintiff a duty to ensure that its appraiser and the chosen umpire were competent and impartial.

38. During the time period described above, Defendant made no attempt to retain the services of a roofing expert, siding expert, or a reconstruction general contractor to assist it in the adjustment of Plaintiff's claim.

39. As Defendant directed its adjuster/agent to merely perform an overview of the damage and minimize the damage by trying to minimize the amount if damage to Plaintiff's property it failed to properly investigate and adjust Plaintiff's loss as it filed the properly adjust Plaintiffs' losses regarding the roof damage, siding damage, and painting.

Case No. 1:17-cv-02196-KLM Document 39-9 filed 03/30/18 USDC Colorado pg 5 of 10

40. Defendant owed Plaintiff a duty to ensure its claim was properly investigated in a timely manner, properly adjusted in a timely manner, and properly paid in a timely manner and failed to do all three of these things.

41. The fact that Defendant's adjuster/agent did not adjust the Plaintiff's claim properly forcing it to file suit is an unreasonable delay in adjusting its claim properly and paying it properly.

42. The fact that Defendant had someone purposely fail to properly investigate and adjust the loss properly is common law bad faith and a breach of the covenant of good faith and fair dealing and is an unreasonable delay.

43. Rather than properly investigate, adjust and pay the loss, based on the terms of the Policy, Defendant refused to appraise the loss and unreasonably delayed and denied payment of covered policy benefits.

44. Defendant refused to properly adjust the loss, thereby compelling Plaintiff to become involved in the litigation process where it still is attempting to limit the scope of the appraisal as well as to become engaged in the litigation process to enforce the provisions of the Defendant's Policy.

45. Defendant failed to properly adjust Plaintiff's claim, failed to properly investigate the loss and did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims, even after liability became reasonably clear.

46. Defendant acknowledged that a covered loss occurred and made partial payments, but refused and denied to pay all damages claimed and owed

47. Defendant's conduct described above was willful and wanton and done heedlessly and recklessly without regard to the consequences to its insured.

48. Defendant knew or should have known that its actions described above were unreasonable. Seneca acted unreasonably and with knowledge of or reckless disregard of its unreasonableness, and caused damages that resulted from its bad faith.

## FIRST CLAIM FOR RELIEF
## (Breach of Contract against Seneca)

49. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50. As set forth above, Plaintiff and Defendant entered into a valid, binding and enforceable contract for insurance covering the losses alleged herein.

51. Plaintiff fully complied with all the provisions of the contract, including without limitation paying premiums in a timely fashion and complying with all provisions governing claims and loss. Alternatively, such conditions precedent have been waived or are excused.

52. It is Defendant's duty to pay for Plaintiff's losses and damages but it has refused to do so.

53. Defendant's insufficient adjustment of Plaintiff's claim constitutes a breach of the insurance contract and is a breach of Plaintiff's reasonable expectations concerning the coverage they would receive under their Policy.

54. Defendant's refusal to appraise the loss properly and value the loss properly constitutes a breach of the insurance contract and is a breach of Plaintiff's reasonable expectations concerning the coverage they would receive under their Policy.

55. Defendant's failure to conduct a reasonable investigation, failure to appraise the total loss, and failure to pay covered policy benefits constitute breaches of the insurance contract.

56. Defendant has underpaid the contractual benefits due and owing Plaintiff and has failed to pay contractual benefits owed to Plaintiff despite repeated requests for the payment of the covered benefits from Plaintiff. In fact Defendant hired representatives that improperly investigated and improperly adjusted Plaintiff's claim in an attempt to avoid paying the benefits owed. Defendant also failed to hire qualified experts to adjust Plaintiff's claim.

57. Defendant refused to provide the contracted benefits and denied Plaintiff the benefit of their bargain, and breached the insurance contract in doing so.

58. As a result of Defendant's breaches, Plaintiff suffered damages, including the amount of the claim owed, together with pre-judgment interest at the highest rate allowed by law, and its reasonable attorneys' fees as allowed by law**.**

**SECOND CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

59. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

60. Plaintiff suffered a loss covered by the Policy, and submitted claims for that loss to Defendant.

61. The claimed losses and damages submitted by Plaintiff were covered by the Policy and Plaintiff is owed covered benefits under the Policy.

62. Defendant refused to pay for the damaged property and, in fact, hired representatives to minimize the amount of damages, inaccurately appraised the amount of damages, improperly investigate the amount of damage, and improperly pay the amount of damages forcing Plaintiff to become involved in the litigation process and in litigation with it causing a delay in payment during the time of the adjustment of the claim.

63. Defendant delayed and denied the payment of covered benefits without a reasonable basis for its actions and continues to delay and deny benefits without a reasonable basis for its actions.

64. The position taken by Defendant deprived Plaintiff of covered benefits since the position asserted by Defendant lacked a reasonable basis upon which to deny benefits.

65. Hiring an agent and representative and directing it to improperly adjust and investigate the claim by merely performing a cursory inspection of the insured property, by not hiring the proper individuals or entities to evaluate Plaintiff's loss, and by hiring an unqualified, biased appraiser and allowing an unqualified, biased umpire to be involved in the appraisal process in order to minimize Plaintiff's claim is unreasonable.

66. Due to the fact that Defendant engaged in such behavior and lacked a reasonable basis from which to deny the covered benefits makes Seneca responsible to Plaintiff for remedies as provided by C.R.S. § 10-3-1116 for its violation of C.R.S. § 10-3-1115.

67. Defendant conducted an improper, incomplete, and/or outcome-orientated investigation of the loss thereby damaging Plaintiff by delaying benefits owed them pursuant to the terms of the Policy.

68. Plaintiff is therefore entitled to two times covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**THIRD CLAIM FOR RELIEF**
**(Bad Faith Breach of Insurance Contract and Breach of the Covenant of Good Faith and Fair Dealing)**

69. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

70. Defendant had a duty to act reasonably and in good faith in handling Plaintiff's claims and in the payment of Plaintiff's insurance claims, including the obligation to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

71. Pursuant to the Policy, Defendant owed Plaintiff the duty of good faith and fair dealing.

72. Defendant, its representatives, and its adjusters owed Plaintiff the obligation to act in good faith and fair dealing.

73. Defendant owed Plaintiff the non-delegable duty to investigate the claim objectively and not just to hunt for facts from which to deny benefits or attempt to not pay the correct amount owed.

Case No. 1:17-cv-02106-KLM Document 39-9 filed 03/30/18 USDC Colorado pg 8 of 10

74. Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insureds' claims.

75. Defendant sold Plaintiff the coverage at issue intending to provide benefits for the covered losses such as hailstorms that occur within the policy period.

76. Plaintiff cooperated with Defendant in the processing of its claim for the covered benefits.

77. Plaintiff did not fail to mitigate or minimize its damages.

78. Plaintiff cooperated with Defendant's investigation and did not erect any obstacles to Seneca's ability to investigate and evaluate Plaintiff's claims for the covered benefits owed.

79. Defendant knew that Plaintiff purchased the Policy to protect the covered premises.

80. Defendant knew that its decision to deny benefits owed to Plaintiff was intentional and not accidental.

81. Defendant knew that its decision to deny paying benefits owed to Plaintiff would cause financial harm to Plaintiff.

82. Defendant knew that its denial to pay the benefits owed would cause Plaintiff financial hardship.

83. Defendant breached its obligations to Plaintiff by failing to pay the proper amount on Plaintiff's claims by hiring agents/adjusters and estimators who did not properly investigate the loss.

84. Defendant breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

85. Defendant breached its duty to act reasonably and in good faith by, inter alia, (1) failing to conduct a reasonable and timely investigation of the facts and law applicable to this matter; (2) failing to appraise the entire loss that resulted from hail; (3) favoring its interests to the exclusion of Plaintiff; (4) failing to effectuate prompt, fair and equitable resolution of Plaintiff's claims after liability has become clear; (5) conducting an incomplete, or outcome-oriented investigation of the loss; (6) delegating its investigation to others without the proper background, knowledge or experience to do so; (7) by improperly directing its agent and representative to perform a cursory investigation of the damage to Plaintiff's property; (8) sending incorrect coverage of loss decisions; (9) compelling Plaintiff to become involved in the litigation process without conducting a thorough investigation and forcing its insured to become involved in litigation to recover amounts due; and (10) otherwise unreasonably and improperly handling Plaintiffs' claim as provided for by C.R.S. § 10-3-1104(1)(h) to include, but not limited to, misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; failing to adopt and

implement reasonable standards for the prompt investigation of claims arising under insurance policies; refusing to pay claims without conducting a reasonable investigation based upon all available information; failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; compelling Plaintiff to file suit to obtain policy benefits owed, and by failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

86. Defendant overlooked material facts and a more thorough investigation would have produced relevant information but they refused to conduct a thorough investigation.

87. Defendant should have known that its conduct was unreasonable and/or Defendant recklessly disregarded the fact that its conduct was unreasonable.

88. Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract of insurance.

89. Defendant's bad faith and breach of the covenant of good faith and fair dealing has caused Plaintiff to suffer and continue to suffer damages, attorneys' fees and costs incurred in bringing this lawsuit, together with pre-judgment interest at the highest rate allowed by law.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;
2. All unpaid covered benefits owed under the party;
3. Two times the amount of all covered benefits under the Policy;
4. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;
5. Other damages including attorney fees resulting from Defendant's bad faith and breach of the covenant of good faith and fair dealing including damages resulting from Defendant's bad faith refusal to cover the damages to Plaintiff's property;
6. Pre- and post-judgment interest; and
7. For such other and further relief as this Court may deem just.

Respectfully submitted this 29th day of September, 2016.

FURTADO LAW PC

s/David J. Furtado
David J. Furtado, Esq.
*Attorney for Plaintiff*

Plaintiff's Address:
Eastwood Townhomes Association, Inc.
4950 S. Yosemite St, F2-506
Greenwood Village, CO 80111